**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| COMPLETE INFUSION CARE, CIC, INC., Plaintiff, v. AETNA LIFE INSURANCE COMPANY, AETNA HEALTH AND LIFE INSURANCE COMPANY, Defendants. | ) | Case No. CV 14-07479 DDP (Ex) **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** [Dkt. No. 20] |

Presently before the court is Defendant Aetna Life Insurance Company ("Aetna")'s Motion to Dismiss the Second Amended Complaint ("SAC"). Having considered the submissions of the parties, the court grants the motion and adopts the following order.

**I. Background**

Plaintiff Complete Infusion Care, CIC, Inc. ("CIC") provides medical services, pharmaceuticals, nursing care, infusions, and other paramedical services and supplies. (SAC ¶ 1.) Aetna is "an insurer and/or health care service plan." (Id. ¶ 2.) Plaintiff rendered medical services to an unspecified number of patients who were "subscribers, members, or insureds" of Aetna's. (Id. ¶ 7.)

Before treating these patients, Plaintiff contacted Aetna to verify that the patient was insured through Aetna and to obtain authorization from Aetna for the treatment. (Id. ¶ 8.) After treating the patients, Plaintiff billed Aetna "as a *bona fide* creditor of the Patients and based upon [Plaintiff's] Assignment of Benefits received from each of the Patients." (Id. ¶ 9.) Aetna paid Plaintiff a unilaterally-set amount for each of Plaintiff's claims, and Plaintiff accepted the payments. (Id. ¶¶ 11-12.)

Over a year later, Aetna requested that Plaintiff repay some of the amounts. (SAC ¶ 14.) The requests explained that Aetna had determined that some of the payments were excessive and that some of the services for which payment had been made were not necessary, not medically appropriate, or were not covered by Aetna insurance polices. (Id. ¶ 15.) Aetna "retracted their previous payments . . . by reducing the amounts paid on new claims . . . on the grounds that [Aetna was] offsetting overpayment amounts previously paid . . . ." (Id. ¶ 18.)

Plaintiff's SAC alleges causes of action for (1) recovery of payment for services rendered, money due on account stated, money due on open book account, and money had and received; (2) conversion; (3) breach of implied contract; (4) estoppel; (5) "violations of statutes and regulations[;]" (6) declaratory relief; and (7) injunctive relief. Aetna now moves to dismiss all claims.

**II. Legal Standard**

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. Id. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id. at 679. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

District courts have diversity jurisdiction over all civil suits where the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332(a). Diversity of citizenship between the parties must be complete. Wisconsin Dept.

of Corrections v. Schacht, 524 U.S. 381, 388 (1998). The citizenship of fraudulently joined or sham defendants, however, including those who cannot be held individually liable, does not destroy diversity. See, e.g. Mercado v. Allstate Ins. Co., 340 F.3d 84, 826 (9th Cir. 2003).

**III. Discussion**

A. Contract Claims

This court's analysis begins with a recognition of the elephant in the room: the potential preemption of Plaintiff's claims by Section 502(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. 1132(a). A state claim "is completely preempted if (1) an individual, at some point in time, could have brought the claim under ERISA § 502(a)(1)(B) and (2) where there is no other independent legal duty that is implicated by a defendant's actions." Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941, 946 (9th Cir. 2009) (citing Aetna Health Inc. v. Davila, 542 U.S. 200, 210 (2004). Section 502(a)(1)(B) allows a plan participant or beneficiary to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." To the extent that Plaintiff's complaint is premised on claims related to self-funded plan benefits, it is subject to dismissal on preemption grounds. See FMC Corp. v. Holliday, 498 U.S. 52, 61-65 (1990).

It is well established that "ERISA preempts the state law claims of a provider suing as an assignee of a beneficiary's rights to benefits under an ERISA plan." Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc., 187 F.3d 1045, 1051

(9th Cir. 1999) (citing The Meadows v. Employers Health Ins., 47 F.3d 1006, 1008 (9th Cir. 1995) (internal quotation omitted). However, the fact that a medical provider has received an assignment and can potentially bring an ERISA suit "provides no basis to conclude that the mere fact of assignment converts the Providers' [non-ERISA] claims into claims to recover benefits under the terms of an ERISA plan." Marin Gen. Hosp., 581 F.3d at 949 (internal quotation and alteration omitted). The court's task, therefore, is to determine whether Plaintiff's SAC implicates "some other legal duty beyond that imposed by an ERISA plan." Id.

The Ninth Circuit has held that ERISA does not preempt claims founded upon a contractual relationship between an insurer and a medical provider. In Blue Cross, "in-network" medical providers who had entered into agreements directly with the insurer challenged the insurer's changes to reimbursement rates. Blue Cross, 1087 F.3d at 1049. The insurer argued that ERISA preempted the providers' claims because the providers' right to payment were dependent on assignments of ERISA plan beneficiaries. Id. at 1050. The court disagreed, holding that the providers' claims arose not from the ERISA plan, but from the providers' independent contractual relationship with the insurer. Id. at 1051. In so holding, the court observed that "the bare fact that the [ERISA] Plan may be consulted in the course of litigating a state-law claim does not require that the claim be extinguished by ERISA's enforcement provision." Id.; See also Catholic Healthcare West-Bay Area v. Seafarers Health Benefit Plan, 321 Fed.Appx. 563, 564 (9th Cir. 2008) ("[W]here a third-party medical provider sues an ERISA plan based on contractual obligations arising directly between the

provider and the ERISA plan . . . , no ERISA-governed relationship is implicated and the claim is not preempted."); Hoag Mem'l Hosp. v. Managed Care Administrators, 820 F.Supp. 1232 (C.D. Cal. 1993) (concluding that ERISA did not preempt provider's negligent misrepresentation claim against an insurer); Doctors Med. Center of Modesto, Inc. v. The Guardian Life Ins. Co. of America, No. 08-cv-00903 OWW, 2009 WL 179681 at *6 (E.D. Cal. Jan. 26, 2009) (concluding ERISA did not preempt provider's intentional interference with contractual relations claim against insurer).

Here, Plaintiff argues that it "seeks to enforce its own independent rights, based upon the actions, transactions and communications that occurred directly between CIC and Aetna. (Opposition at 15:21-24.) Indeed, the SAC alleges that "[a]ll of the claims asserted in this complaint are based upon the individual and proper rights of [CIC] in its own individual and proper capacity and are not derivative of the contractual or other rights of [CIC]'s patients. (SAC ¶ 6.) The SAC explicitly disclaims any right to payment based on any of its patients' insurance contracts. (Id.) At the same time, however, the SAC alleges that it submitted claims to Aetna "based upon [CIC]'s Assignment of Benefits received from each of the Patients." (SAC ¶ 9.) These two allegations appear inherently contradictory.

The confusion regarding the basis for Plaintiff's claims is further exacerbated by its Fifth Cause of Action for "Violation of Statutes and Regulations." Putting aside the question whether such a cause of action exists under California law, the claim invokes

California Health & Safety Code §§ 1371.1(a) and 1371.8, California Insurance Code § 796.04, and 28 California Code of Regulations § 1300.71. (SAC ¶ 63-65.) As Defendant argues, all of these provisions concern duties of health care insurers with respect to providers in the context of an insurance policy. Although mere reference to an ERISA plan does not necessarily mean a claim is preempted, Plaintiff makes no attempt to address Defendant's argument or explain how CIC can bring claims based upon statutory violations of insurers' duties in the context of insurance policies, yet at the same time allege that all of its claims are derived solely from CIC's interactions with Aetna and have nothing to do with any insurance policy.[1] See Blue Cross, 1087 F.3d at 1049.

To the extent the SAC alleges non-preempted, contract-based claims, those too are insufficiently pleaded. The elements of a breach of contract claim are (1) the existence of a contract, (2) performance or excuse for nonperformance, (3) defendant's breach, and (4) damages. Oasis West Realty, LLC v. Goldman, 51 Cal.4th 811, 821 (2011). See Rockridge Trust v. Wells Fargo, N.A., 985 F.Supp.2d 1110, 1141 (N.D. Cal. 2013). A valid contract requires capable, consenting parties, a lawful object, and sufficient cause or consideration. Janda v. Madera Community Hosp., 16 F.Supp.2d 1181, 1186 (E.D. Cal. 1998); Cal. Civ. Code § 1550. A contract may be either express or implied. Cal. Civil Code § 1619. "A cause of action for breach of implied contract has the same elements as does

---

[1] Nor does Plaintiff address Defendant's argument that Plaintiff fails to allege that it met its own obligations under several of the statutes invoked.

a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." Yari v. Producers Guild of Am., Inc., 161 Cal.App.4th 172, 182 (2008).

Defendant's contention that the SAC fails to allege mutual assent is not particularly persuasive. "An essential element of any contract is the consent of the parties, or mutual assent." Donovan v. RRL Corp., 26 Cal.4th 261, 270 (2001). Defendant argues that an allegation of assent requires facts identifying Defendant's representatives, timing regarding the agreement, the specific rate agreed to, and, again, the manner of addressing overpayments. The court is not persuaded that such details are required to adequately allege assent, particularly in the context of a claim for breach of an implied contract. The SAC's allegations that Aetna authorized treatment in advance and, more importantly, habitually paid Plaintiff for the treatment rendered, are sufficient indicia of Aetna's assent.

Nevertheless, the court's analysis of Plaintiff's contract-related claims is hindered by the lack of clarity in both the SAC and Plaintiff's opposition. Plaintiff's opposition refers to "claims for breach of contract and implied contract" and "oral contracts" between the parties. "An oral contract claim is based on oral representations, while an implied contract claim is predicated on the promisor's conduct." Davoodi v. Imani, No. C 11-0260 SBA, 2011 WL 250392 at *3 (N.D. Cal. Jan. 26, 2011). Although the SAC only alleges a cause of action for breach of implied contract, not breach of an express, oral contract, it makes

references to "oral contracts" and an unspecified "oral agreement." There cannot, however, "be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time." Wal-Noon Corp. v. Hill, 45 Cal.App.3d 605, 613 (1975). Plaintiff's contract-related claims are, therefore, dismissed.[2]

B. Conversion

Under California law, conversion requires (1) ownership or right to possession of property, (2) wrongful disposition of that property, and (3) damages. G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Serv., Inc., 958 F.2d 896, 906 (9th Cir. 1992). The SAC identifies money as the property at issue here. "A cause of action for conversion of money can be stated only where defendant interferes with plaintiff's possessory interest in a specific, identifiable sum . . . ." Turner v. Ocwen Loan Servicing, LLC, No. 14-CV-659-L, 2014 WL 6886054 at *7 (S.D. Cal. Dec. 23, 2014). The SAC identifies no such sum. Plaintiff's conversion claim is therefore DISMISSED.

C. Unopposed Claims

Plaintiff does not address or oppose Defendant's arguments that the First, Fifth, and Seventh Causes of Action must be dismissed because they are not independent causes of action in California. Those claims are DISMISSED.

**IV. Conclusion**

[2] This includes, at this juncture, Plaintiff's estoppel claim, which is, somewhat confusingly, allegedly predicated on "a breach of the agreements." (SAC ¶ 56.)

For the reasons stated above, Defendant's Motion to Dismiss is GRANTED. The SAC is DISMISSED, with leave to amend. Any amended complaint shall be filed within fourteen days of the date of this order.

IT IS SO ORDERED.

Dated: February 4, 2016

DEAN D. PREGERSON
United States District Judge